Shirley D. WILLIAMS, Claimant–Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

No. 02–7020.

United States Court of Appeals, Federal Circuit.

Nov. 13, 2002.

P. Heith Reynolds, Wolfe, Williams & Rutherford, of Norton, VA, argued for claimant-appellant. On the brief was Roger W. Rutherford.

Martin F. Hockey, Jr., Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and David M. Cohen, Director. Of counsel on the brief were Richard D. Hipolit, Deputy Assistant General Counsel; and David J. Barrans, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

Before CLEVENGER, SCHALL, and LINN, Circuit Judges.

LINN, Circuit Judge.

Shirley D. Williams ("Williams") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans' Court") affirming a determination by the Board of Veterans' Appeals ("Board") that Williams was not entitled to an effective date prior to October 20, 1989, for her award of dependency and indemnity compensation ("DIC"). *Williams v. Principi,* 15 Vet.App. 189 (2001) (en banc). Because the Veterans' Court correctly determined that the stipulation set forth in *Nehmer v. United States Veterans' Administration,* No. CV–86–6160 (N.D.Cal. May 20, 1991), governed Williams' award date, and the Veterans' Court did not err as a matter of law in its interpretation of that stipulation, we affirm.

## I. BACKGROUND

Williams' husband, James B. Williams, a Vietnam veteran, died of lung cancer on June 28, 1979. Williams filed a claim for DIC benefits in August 1979. In November 1979, a Veterans' Administration ("VA") regional office ("RO") denied Williams' claim. The Board finally denied her claim on October 2, 1980, finding that the lung cancer did not develop in service or within a presumption period, that it did not result from exposure to Agent Orange, and that it was not causally related to service-connected disabilities. In 1984, Congress passed the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, which mandated the establishment of standards for assessing Agent Orange claims. Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, § 3, 98 Stat. 2725 (1984) (codified in part at 38 U.S.C. § 1154 (2000)) ("Dioxin Act"). In June 1985, Williams again filed for DIC benefits. The VA reopened the original claim, and denied it again on July 22, 1985.

On September 25, 1985, 38 C.F.R. § 3.311a came into effect; this regulation established service connection between dioxin exposure and the skin condition chloracne. Adjudication of Claims Based on Exposure to Dioxin or Ionizing Radiation, 50 Fed.Reg. 34,452, 34,458 (August 26, 1985) (codified at 38 C.F.R. § 3.311a). The validity of this regulation was challenged in a class action suit filed in the Northern District of California in 1987. *Nehmer v. United States Veterans' Administration,* 118 F.R.D. 113 (N.D.Cal. 1987) (*"Class Certification"*). The district court granted class certification to plaintiffs denied benefits on claims of disability resulting from service-connected dioxin exposure. *Id.* at 125. In its class certification, those plaintiffs who were denied benefits prior to the effective date of § 3.311a were held to lack standing. *Id.* at 117. In May of 1989, the district court held that the regulation was contrary to the Dioxin Act and voided all benefit denials that were made under § 3.311a(d). *Nehmer v. United States Veterans' Administration,* 712 F.Supp. 1404, 1409 (N.D.Cal.1989) (*"Nehmer I"*). The district court later clarified that the claims "made under" § 3.311a(d) were those "in which the disease or cause of death is later found— under valid Agent Orange regulation(s)— to be service connected." *Nehmer v. United States Veterans Administration,* 32 F.Supp.2d 1175, 1183 (N.D.Cal.1999) (*"Nehmer II"*).

In October 1989, Williams requested that her DIC claim be reopened. On January 3, 1990, the Department of Veterans' Affairs ("DVA") notified her that it was delaying action on her claim pending reconsideration of its regulations relating to dioxin exposure. On February 6, 1991, the Agent Orange Act of 1991 was passed; this statute established a presumption of service connection, by reason of exposure to dioxin, for diseases that were to be identified in later-promulgated regulations. Agent Orange Act of 1991, Pub.L. No. 102–4, § 2, 105 Stat. 11 (1991) (codified in part at 38 U.S.C. § 316 (2000)) ("Agent Orange Act").

In May 1991, the government and the plaintiffs in the *Nehmer* litigation entered into a stipulation according to which the DVA would readjudicate claims, the denials of which were voided by the 1989 *Nehmer I* decision. *Nehmer v. United States Veterans Administration,* No. CV–86–6160 (TEH), (N.D.Cal. May 17, 1991) (*"Nehmer Stipulation"*). The effective date of any resulting award of benefits would be based on the filing date of the original claim, for claims originally filed before May 3, 1989 ("Stipulation 1"), or on the later of the filing date of the claim or the date of disability or death of the veteran, for claims filed on or after May 3, 1989 ("Stipulation 2"). *Id.,* slip op. at 2–5.

On June 9, 1994, revised 38 C.F.R. § 3.309(e), establishing a presumption of service connection for lung cancer, came into effect. Disease Associated with Exposure to Certain Herbicide Agents (Multiple Myeloma and Respiratory Cancers), 59 Fed.Reg. 29,723, 29,724 (June 9, 1994) (codified at 38 C.F.R. §§ 3.307(a), 3.309(e)) (adding the words "Respiratory cancers (cancer of the lung, bronchus, larynx, or trachea)" to the list of diseases which are service-connected "[i]f a veteran was exposed to an herbicide agent during active military . . . service"). In July of 1994, the RO granted service connection for James Williams' cancer, and later established the effective date of Williams' DIC benefits to be October 20, 1989, the date on which Williams requested reopening of her DIC claim. Williams appealed the decision to the Board.

Both the Board and the Veterans' Court held that, pursuant to the *Nehmer* Stipulation, Williams was entitled to an effective date that was the same as that of her request to reopen the claim, October 20, 1989. Williams has appealed the decision of the Veterans' Court to this court. We have jurisdiction under 38 U.S.C. § 7292.

## II. DISCUSSION

### A. Standard of Review

This scope of this court's review of a decision of the Veterans' Court is governed by 38 U.S.C. § 7292(d):

> (d)(1) The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions. The court shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the Court of Appeals for Veterans Claims that the Court of Appeals for the Federal Circuit finds to be—
>
> > (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law;
> >
> > (B) contrary to constitutional right, power, privilege, or immunity;
> >
> > (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or
> >
> > (D) without observance of procedure required by law.
>
> (2) Except to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a

law or regulation as applied to the facts of a particular case.

The interpretation of a court order involves a question of law. *YBM Magnex, Inc. v. Int'l Trade Comm'n*, 145 F.3d 1317, 1320 (Fed.Cir.1998).

### B. Analysis

■ At issue in the present appeal is the effective date of Williams' DIC benefits. Williams appealed from the Board's determination that she was not entitled to an effective date earlier than October 20, 1989. In its *en banc* split decision, the Veterans' Court addressed the legal questions of:

> whether *Nehmer I* and *Nehmer II* had the legal effect of voiding the 1980 and 1985 denials of [Williams'] August 1979 and June 1985 DIC claims; whether, if those denials were voided, there is a legal basis for an earlier effective date under Stipulation 1 or the statutory and regulatory effective date provisions; and whether, if the denials were not voided, there is a legal basis for an earlier effective date, under Stipulation 2 or the statutory and regulatory effective-date provisions, based on the 1979, 1985, or 1989 claim.

*Williams*, 15 Vet.App. at 196. The Veterans' Court held that "neither *Nehmer I* nor *Nehmer II* was intended to have the legal effect of voiding either the October 1980 or the June 1985 denial of the appellant's 1979 and 1985 claims, respectively, both of which occurred prior to the promulgation of former § 3.311a." *Id.* at 196–97. Accordingly, the Veterans' Court concluded that "Stipulation 1, which by its terms applies only where a prior decision has been voided by *Nehmer I*, is inapplicable." *Id.* at 197. Since the 1980 and 1985 denials remained final, the Veterans' Court

held that the denied claims could not "serve as a basis for an earlier effective date under the statutory or regulatory effective-date provisions." *Id.* The Veterans' Court further stated that Williams could not be awarded an earlier effective date even if the 1980 and 1985 denials had been voided by *Nehmer I* or *Nehmer II. Id.* In so concluding, the Veterans' Court relied on 38 U.S.C. § 5110(g), which provides that when DIC benefits, *inter alia,* are "awarded or increased pursuant to any Act or administrative issue," the effective date cannot be earlier than the date of the liberalizing act or issue. 38 U.S.C. § 5110(g) (2000). Since Williams' award of DIC benefits in July 1994 was made pursuant to liberalizing regulations that became effective on June 9, 1994, the latter date was the earliest effective date allowed by the statute. *Williams,* 15 Vet.App. at 197.

Williams argues that the majority's interpretation of the *Nehmer* Stipulation is too restrictive. She adverts to the familiar principle that "the character of the veterans' benefits statutes is strongly and uniquely pro-claimant." *Hodge v. West,* 155 F.3d 1356, 1362 (Fed.Cir.1998). Williams argues that the *Nehmer* Stipulation, as interpreted in the *Nehmer II* decision, voided the denials of all prior claims for service connection for illnesses resulting from dioxin exposure. Because in Williams' view her 1979 claim was voided by the *Nehmer* Stipulation, she argues that that claim is still pending and DIC benefits should be awarded with an effective date of June 28, 1979, the date of James Williams' death. Williams argues that such an effective date would not be precluded by 38 U.S.C. § 5110(g), as the "Act or administrative issue" pursuant to which the DIC benefits would be granted is unspecified legislation funding VA research into the effects of dioxin.

Alternatively, Williams argues that the benefits could be awarded based on the 1985 claim; in that case, she maintains that the "Act or administrative issue" set forth in 38 U.S.C. § 5110(g) would be the 1984 Dioxin Act, which sets forth as its purpose "to ensure that Veterans' Administration disability compensation is provided to veterans who were exposed during service in the Armed Forces in the Republic of Vietnam to a herbicide containing dioxin." Dioxin Act, Pub.L. No. 98–542, § 3, 98 Stat. 2725 (1984). Williams argues that this view is bolstered by the Veterans' Court minority's conclusion that "the 1984 Dioxin Act is the legislation enabling VA's provision, at that time and at any future date, of disability and survivor compensation based on exposure to Agent Orange in Vietnam." *Williams,* 15 Vet.App. at 202–03. She thus maintains that, at a minimum, she is entitled to an effective date of October 24, 1984, the effective date of the Dioxin Act.

The government responds that Williams is not entitled to an effective date prior to October 20, 1989. It argues that the award of DIC benefits was made pursuant to DVA's June 9, 1994 regulation establishing a presumption of service connection for lung cancer, not pursuant to earlier legislation providing for studies into the effects of dioxin, so that Williams is not entitled to an effective date based on that earlier legislation under 38 U.S.C. § 5110(g). Furthermore, the government argues that the Veterans' Court correctly concluded that the denials of Williams' 1979 and 1985 claims were not voided by *Nehmer I,* because those claims were denied before the challenged regulation took effect, and therefore the earliest effective date allowable under the *Nehmer* Stipulation is October 20, 1989, the date of Williams' third claim for DIC benefits.

1

The *Nehmer* class action was filed in February 1987; the named plaintiffs chal-

lenged the promulgation in 1985 of a regulation, 38 C.F.R. § 3.311a, as an improper implementation of the 1984 Dioxin Act. *Class Certification*, 118 F.R.D. at 115–16. This regulation, entitled "Claims based on exposure to herbicides containing dioxin during service in the Republic of Vietnam," established a presumption that veterans who served in the Republic of Vietnam were "exposed to a herbicide containing dioxin while in Vietnam." 38 C.F.R. § 3.311a(b) (1986). However, the regulation granted service connection only for "[c]hloracne manifested not later than three months from the date of exposure." *Id.* § 3.311a(c). The regulation specified that "[s]ound scientific and medical evidence does not establish a cause and effect relationship between dioxin exposure and [all other] diseases." *Id.* § 3.311a(d). In certifying the class of plaintiffs, the court distinguished plaintiffs who had been denied benefits under § 3.311a from those whose claims had been denied prior to the effective date of the regulation:

> Plaintiffs claim that the 1985 regulation, and the procedures used to enact it, violate the Dioxin Act. Plaintiffs denied benefits prior to the regulation's enactment lack standing to pose that legal challenge to their denial.

*Class Certification*, 118 F.R.D. at 117.

In 1989, the court invalidated § 3.311a(d), the portion of the regulation that denied service connection for diseases other than chloracne. *Nehmer I*, 712 F.Supp. at 1409. The court held that "the Administrator's adoption of the cause and effect test and failure to give the benefit of the doubt to veterans violated the Dioxin Act." *Id.* The court voided "all benefit decisions made under" 38 C.F.R. § 3.311a(d), and remanded the case to the VA for further proceedings. *Id.*

In May of 1991, the parties agreed to a Final Stipulation and Order that resolved the remaining issues of injunctive and monetary relief for the class. *Nehmer Stipulation*, No. CV–86–6160 (TEH) (N.D.Cal. May 17, 1991). The *Nehmer Stipulation* provided that the VA would complete its analysis of possible connections between dioxin exposure and three specified diseases, among them lung cancer. *Nehmer* Stipulation, slip op. at 2. On reviewing the resulting scientific report, the Secretary would determine whether or not to issue a final rule establishing service connection for each disease. *Id.*, slip op. at 2–3. The Stipulation then set forth the VA's course of action following the issuance of such a final rule:

> 3. As soon as a final rule is issued service connecting, based on dioxin exposure, any of the three diseases, soft tissue sarcoma, and any other disease which may be service connected in the future pursuant to the Agent Orange Act of 1991, 38 U.S.C. § 316(b), the VA shall promptly thereafter readjudicate all claims for any such disease which were voided by the Court's Order of May 3, 1989 [*Nehmer I*], as well as adjudicate all similar claims filed subsequent to the Court's May 3, 1989 Order, without waiting for final rules to be issued on any other diseases.
>
> . . . .
>
> 5. For any of the three diseases for which the Secretary determines to issue a final positive rule . . . as to any denials of claims which were voided as a result of the Court's May 3, 1989 Order, the effective date for disability compensation or dependency and indemnity compensation ("DIC"), if the claim is allowed upon readjudication . . . will be the date the claim giving rise to the voided decision

was filed (except as otherwise provided in 38 U.S.C. §§ 3010(b)(1), or 3010(d)(1)) .... For any claim for any such disease which was not filed until after May 3, 1989, the effective date for beginning disability compensation or DIC will be the date the claim was filed or the date the claimant became disabled or death occurred, whichever is later.

*Id.*, slip op. at 3–5.

A dispute subsequently arose as to which benefit decisions were "made under" 38 C.F.R. § 3.311a(d), *Nehmer I*, 712 F.Supp. at 1423, and were thus "voided by" the *Nehmer I* decision in the meaning of Paragraph 3 of the *Nehmer* Stipulation. In *Nehmer II*, two members of the class of plaintiffs had been denied service-connected benefits during the period when 38 C.F.R. § 3.311a was in effect. The denied claims were "based on a disease that the VA did not then recognize as linked to Agent Orange—but which the VA [later] recognize[d was] so linked pursuant to its revised Agent Orange regulations." *Nehmer II*, 32 F.Supp.2d at 1177. At the time, the VA policy was that Paragraph 3 of the *Nehmer* Stipulation did not require it to readjudicate such claims unless the claim specifically alleged that Agent Orange was a factor, or the VA's denial of the claim specifically cited 38 C.F.R. § 3.311a. *Id.* at 1177–78. Plaintiffs challenged the VA policy as a violation of the *Nehmer* Stipulation. *Id.* at 1178. The court, reasoning that "a benefit decision could have been erroneously decided because of the flawed regulation even if the claim did not expressly reference Agent Orange or the VA did not cite to 38 C.F.R. § 3.311a(d) in its written denial," *id.* at 1180, held that "the Court's order voiding all benefits decisions 'made under 38 C.F.R. § 3.311a(d)' voided all benefit deci-

sions which involved claims in which the disease or cause of death is later found—under valid Agent Orange regulation(s)—to be service connected." *Id.* at 1183. This interpretation of the *Nehmer* Stipulation was affirmed on appeal. *Nehmer v. Veterans' Administration of the Gov't of the United States*, 284 F.3d 1158 (9th Cir. 2002).

Williams argues that the statement in *Nehmer II* that *Nehmer I* "voided all benefit decisions which involved claims in which the disease or cause of death is later found—under valid Agent Orange regulation(s)—to be service connected," *Nehmer II*, 32 F.Supp.2d at 1183, means that even denials prior to the promulgation of 38 C.F.R. § 3.311a were voided by *Nehmer I*. Thus, Williams maintains, her 1979 and 1985 claims, which were both denied prior to the effective date of 38 C.F.R. § 3.311a, are eligible for readjudication. Williams' view of the *Nehmer* Stipulation is too expansive. The *Nehmer* litigation was a challenge to the validity of a specific regulation, 38 C.F.R. § 3.311a(d), as a violation of the Dioxin Act. Williams' 1985 claim was denied before the challenged regulation took effect, and her 1979 claim was denied even before the effective date of the Dioxin Act, which was the basis of the challenge to the regulation. These denials were thus outside the scope of the *Nehmer* litigation. As the district court ruled, plaintiffs who were "denied benefits prior to the regulation's enactment lack[ed] standing" to challenge § 3.311a. *Class Certification*, 118 F.R.D. at 117. Because the denials of Williams' 1979 and 1985 claims occurred before the effective date of § 3.311a, those denials were unaffected by the outcome of the *Nehmer* litigation, remain final, and are not eligible for readjudication.

2

■ Williams also raises, as an alternative basis for entitlement to an earlier

effective date for her DIC benefits, 38 U.S.C. § 5110(g). That statute provides that:

> where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue.

38 U.S.C. § 5110(g) (2000). Williams argues that either the 1984 Dioxin Act, or unspecified litigation funding VA research into the effects of dioxin exposure, could be the "Act or administrative issue" pursuant to which Williams' DIC benefits were awarded.

We do not agree. Section 5110(g) "provides the means for determining the effective date of any award of VA benefits made pursuant to a liberalizing law or administrative issue." *Spencer v. Brown,* 17 F.3d 368, 371 n. 5 (Fed.Cir.1994) (quoting *Spencer v. Brown,* 4 Vet.App. 283, 288 (1993)). The minority view in the Veterans' Court would have held that "the 1984 Dioxin Act is the legislation enabling VA's provision, at that time and at any future date, of disability and survivor compensation based on exposure to Agent Orange in Vietnam." *Williams,* 15 Vet.App. at 202–03. However, Williams' benefits could not have been awarded pursuant to the Dioxin Act, as that statute simply directed the Administrator of the VA to:

> (1) establish guidelines and (where appropriate) standards and criteria for the resolution of claims for benefits under laws administered by the Veterans' Administration where the criteria for eligibility for a benefit include a requirement that a death or disability be service connected and the claim of service connec-

tion is based on a veteran's exposure during service ... in the Republic of Vietnam during the Vietnam era to a herbicide containing dioxin ... and

> (2) ensure that, with respect to those claims, the policy of the United States described in section 2(13) [the "benefit of the doubt" rule] is carried out.

Dioxin Act, Pub.L. No. 98–542, § 5, 98 Stat. 2725 (1984). Since this statute did not establish service connection for lung cancer in veterans exposed to dioxin during service, it did not establish a present entitlement to DIC benefits for Williams. Similarly, statutes which may have provided funding in 1979 for the VA to conduct dioxin-related research did not establish an entitlement to DIC benefits for widows of veterans who died as a result of lung cancer after exposure to dioxin during service. Rather, the award of DIC benefits to Williams was first made possible by, and was thus made "pursuant to," revised 38 C.F.R. § 3.309(e), which took effect on June 9, 1994. Disease Associated with Exposure to Certain Herbicide Agents (Multiple Myeloma and Respiratory Cancers), 59 Fed.Reg. 29,723, 29,724 (June 9, 1994) (codified at 38 C.F.R. §§ 3.307(a), 3.309(e)).

AFFIRMED

COSTS

No costs.