NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JACK DAVIS,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-2239

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-4975, Judge William S. Greenberg.

---

Decided: December 5, 2019

---

JACK DAVIS, St. Louis, MO, pro se.

MICHAEL DUANE AUSTIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JOSEPH H. HUNT, JAMES PATRICK CONNOR, ROBERT EDWARD KIRSCHMAN, JR.; CHRISTOPHER O. ADELOYE, BRIAN D. GRIFFIN, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

_____

Before LOURIE, DYK, and CHEN, *Circuit Judges.*

PER CURIAM.

Jack Davis appeals from a decision of the Court of Appeals for Veterans Claims ("Veterans Court"). The Veterans Court affirmed a decision of the Board of Veterans' Appeals ("Board") that Mr. Davis is not entitled to effective dates earlier than February 25, 2010, for his diabetes and secondary erectile dysfunction claims and August 31, 2010, for his coronary artery disease claim. We *affirm*.

BACKGROUND

Jack Davis served in the U.S. Army from August 1965 to May 1969. His service included a tour of duty in Thailand. Between 1995 and 1997, Mr. Davis suffered a heart attack and was diagnosed with diabetes and erectile dysfunction. Although Mr. Davis "believed [he] was exposed to toxic herbicides while serving in Thailand in 1966/67," Appellant's Br. 2, he did not file a claim for these conditions until February 25, 2011, because the VA had not recognized that herbicide was used on bases in Thailand until May of 2010.

After initially denying Mr. Davis's claim in July 2012, the Department of Veterans Affairs ("VA") regional office ("RO") acknowledged in December 2014 that Mr. Davis was exposed to herbicides during his service in Thailand and assigned him disability ratings for all three of his service-related health conditions with an effective date of February 25, 2011—the date his claim was received. After Mr. Davis filed a Notice of Disagreement, the RO, in light of the statutory provisions setting effective dates for clams affected by liberalizing laws, granted him earlier effective dates of February 25, 2010, for his diabetes and erectile

dysfunction—one year before his claim was received—and August 31, 2010 for his coronary artery disease—the date that the VA recognized coronary artery disease as being linked to herbicide exposure.

Mr. Davis appealed to the Board, arguing that the effective date for his coronary art disease should be the date of his heart attack in 1995 and the effective date of his diabetes and secondarily-related erectile dysfunction should be in 2001 "based on when that condition was added [by the VA] to the list of diseases associated with certain herbicide agents." S.A. 43.[1]  On November 13, 2017, the Board denied Mr. Davis's requests for earlier effective dates.  For the diabetes and secondary erectile dysfunction claims, the Board explained that "[t]he [liberalizing] law adding diabetes . . . to the list of diseases associated with exposure to certain herbicide agents became effective May 8, 2001" and that, under the statute and related regulations, Mr. Davis was thus only entitled to an effective date of "1 year prior to receipt of [his] claim," i.e., February 25, 2010.  S.A. 44 (citing 66 Fed. Reg. 23,166 (May 8, 2001) (amending 38 C.F.R. § 3.309(e)) and 38 C.F.R. § 3.114(a)(3)).   As to the coronary artery disease claim, the Board explained that the liberalizing law adding this condition "to the list of diseases associated with exposure to certain herbicide agents became effective August 31, 2010" and, under the relevant statute and regulations, this date is thus the earliest effective date that "is appropriate for the grant of service connection for coronary artery disease." S.A. 44–45 (citing 75 Fed. Reg. 53,202 (Aug. 21, 2010) (amending 38 C.F.R. § 3.309) and 38 C.F.R. § 3.114(a)(3)).

Mr. Davis appealed to the Veterans Court.  The Veterans Court found "no clear error in the Board's findings that the appellant was not entitled to earlier effective dates for

---

[1]    S.A. refers to the Supplemental Appendix attached to Appellee's brief.

his service-connected condition." S.A. 4. The Veterans Court also noted that it did not have any equitable powers to grant Mr. Davis an earlier effective date, but that "[t]he effective dates assigned for the appellant's herbicide-related conditions are . . . not equitable" because "a claimant should not have to file claims in futility to receive the benefit of earlier effective dates." *Id.*

Mr. Davis timely appealed to this court, and we have jurisdiction pursuant to 38 U.S.C. § 7292. While we lack jurisdiction as to "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case," 38 U.S.C. § 7292(d)(2), we consider this appeal to relate to the legal question of the effect of liberalizing laws on effective dates.

DISCUSSION

The question of how the VA should treat veterans who were exposed to toxic herbicides while serving in Vietnam has a long history. In 1991, Congress passed the Agent Orange Act, which established a presumption of herbicide exposure during service if the veteran suffers from a disease listed in the statute that have been medically linked to herbicide exposure. 38 U.S.C. § 1116(a)(1). The Act also directed the Secretary, "[w]henever the Secretary [of Veterans Affairs] determines, on the basis of sound medical and scientific evidence, that a positive association exists between (A) the exposure of humans to an herbicide agent, and (B) the occurrence of a disease in humans" to "prescribe regulations providing that a presumption of service connection is warranted for that disease." 38 U.S.C. § 1116(b)(1). To that end, the Secretary has added a number of diseases to that presumptive list for Vietnam veterans, codified at 38 C.F.R. 3.309(e), including Type 2 diabetes on May 8,

2001 (66 Fed. Reg. 23,166) and coronary heart disease on August 31, 2010 (75 Fed. Reg. 53,202).[2]

Section 5110(g) of title 38 prescribes the effective date for a claim for benefits based on a new liberalizing regulation, such as one adding a new presumption for service connection to a disease. Under section 5110(g), the effective date of an award under a liberalizing law "shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the [liberalizing] Act or administrative issue." *Hunter v. Shinseki,* 538 F. App'x 904 (Fed. Cir. 2013) (alteration in original) (quoting 38 U.S.C. § 5110(g)). A "liberalizing law" is "one which brought about a substantive change in the law creating a new and different entitlement to a benefit." *Spencer v. Brown,* 17 F.3d 368, 372 (Fed. Cir. 1994). Section 5110(g) imposes an additional requirement concerning effective dates. It provides that "[i]n no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier." 38 U.S.C. § 5110(g). The result is that if the application for benefits is made after the date of the liberalizing law, the effective date is one year before the date of claim (but not before the date of the liberalizing law). *McCay v. Brown,* 106 F.3d 1577, 1581 (Fed. Cir. 1997) (citing 38 C.F.R. § 3.114(a)(3) (1994)).

The Board made no error in denying Mr. Davis earlier effective dates. The Board had no statutory authority to grant an effective date for coronary artery disease earlier than the date of the VA's regulation creating a new

---

[2] There appears to be no statute or regulation that formally extended the presumption of herbicide exposure to Thailand. This change was accomplished by a VA amendment to the VA Adjudication Procedures Manual M21-1 and an accompanying announcement in the VA Compensation & Pension Service Bulletin in May 2010.

presumption of service connection between exposure to herbicides and coronary heart disease—namely, August 31, 2010. Mr. Davis was also not entitled to an effective date of more than one year prior to his claim for his diabetes and secondarily-related erectile dysfunction even though the liberalizing law was earlier.[3] *See McCay*, 106 F.3d at 1581–82.

The Veterans Court lacked equitable power to grant an earlier date than authorized by the statute. That court cannot "grant a money payment where[, as here,] Congress has not authorized such a payment" and has, in fact "expressly foreclosed such payments" under 38 U.S.C. § 5110(g). *McCay*, 106 F.3d at 1581–82; *see also Burris v. Wilkie*, 888 F.3d 1352, 1361 (Fed. Cir. 2018) ("[T]he Veterans Court cannot invoke equity to <u>expand</u> the scope of its statutory jurisdiction."); *Taylor v. Wilkie*, 31 Vet. App. 147, 153 (2019) ("[T]he Federal Circuit in *Burris* distinguished the kind of equitable relief that the Court has authority to grant—relief provided by other statutes such as the All Writs Act and interlocutory, procedural relief—from the kind it does not have jurisdiction to grant—'substantive, monetary relief.'" (quoting *Burris*, 888 F.3d at 1361)).

## AFFIRMED

---

[3] Mr. Davis also raises on appeal the issue of whether his diabetes "could have aggravated [his] sleep apnea." Appellant's Br. 3. The Veterans Court noted that "the matter[] of service connection for . . . . sleep apnea" was remanded by the Board. S.A. 1. The Veterans Court thus lacked jurisdiction to address this issue. *See Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1366 (Fed. Cir. 2005) (affirming Veterans Court dismissal because it "correctly concluded that it lacked jurisdiction over Kirkpatrick's appeal [of a Board's remand order]").

COSTS

No costs.